644 A.2d 705

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Curry PERRY, a/k/a Perry Curry, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1993.

Decided July 1, 1994.

386

George Henry Newman, Philadelphia, for P. Curry.

Catherine Marshall, George S. Leone, Philadelphia, for Com.

Robert Graci, Harrisburg, for Atty. Gen.

Before NIX, C.J., and LARSEN, FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and MONTEMURO, JJ.

*OPINION OF THE COURT*

FLAHERTY, Justice.

In this appeal from a death sentence, appellant claims that his trial counsel was constitutionally ineffective. Appellant is correct, and a new trial is necessary due to inexcusably derelict representation by defense counsel.

In the early morning hours of August 7, 1987, appellant, Curry Perry, took his neighbor, Michael Shuler, to a private masonic club in Philadelphia as his guest. The two drank together, then argued over Perry's assertion that Shuler had broken into his apartment, then fought, and Perry stabbed Shuler twice in the chest, fatally wounding him. Perry supported the dying victim out of the club to the sidewalk, where he abandoned the victim and fled.

Immediately after the crime while Perry was at large, Emmett Smith, the bartender, who had lost his left eye and suffered from glaucoma in the right, tentatively identified Perry as the killer from a police photograph. Within a week after the killing, police twice entered Perry's Philadelphia

apartment, once with a search warrant and once without, gaining access through the cooperation of the landlord, and observed that the apartment had been abandoned. Appellant told William Arnold, a co-worker and friend, that he would not be returning to work because he had been in a fight in a bar and had stabbed a fellow because he had been breaking into his apartment. The police were unable to locate Perry for nineteen months, then received a telephone tip which enabled them to arrest him on March 17, 1989.

On March 21, 1989, Anthony D. Jackson, Esquire, was appointed to represent appellant. On May 25, 1989, defense counsel obtained authorization to retain a private investigator at court expense. Counsel retained an investigator on February 21, 1990, voir dire began on February 26, and the two phases of appellant's trial occurred from March 1 through March 9, 1990. At appellant's death sentence hearing on March 8, the Commonwealth proved that appellant had pleaded guilty to second-degree murder in 1979, which constitutes an aggravating circumstance under 42 Pa.C.S. § 9711(d)(11), and the jury returned a verdict of death. Post-verdict motions were heard on October 28, 1990, and sentence was pronounced on November 15, 1990. This automatic appeal pursuant to 42 Pa.C.S. § 9711(h)(1) followed, but trial counsel failed to file a brief with this court for sixteen months after the appeal was docketed. He was permitted to withdraw after present appellate counsel entered his appearance on May 18, 1992.

Appellate counsel has presented a variety of issues, all couched in terms of the ineffectiveness of trial counsel, arguing primarily that his predecessor failed to prepare appellant's case, displaying shocking unpreparedness for both phases of trial.

Allegations of failing to prepare for trial consist of three particulars: failure to interview his client prior to trial; improper use of his investigator; and failure to seek suppression. With regard to the first, the record includes the following exchange during the hearing on post-verdict motions:

THE DEFENDANT: Curry Perry, 1531 North 15th Street.

THE COURT: What do you want to say?

THE DEFENDANT: Your Honor, I filed a petition for ineffective assistance of counsel.

THE COURT: Why?

THE DEFENDANT: I just didn't want Mr. Jackson to represent me on my motion.

THE COURT: Why not?

THE DEFENDANT: I feel he don't know legal litigation.

THE COURT: Who do you want to represent you?

THE DEFENDANT: I want to have another attorney.

THE COURT: The Constitution says you have the right to counsel.

The Constitution does not say you have a right to go through the Philadelphia Bar and take one attorney at a time seriatim.

THE DEFENDANT: That wasn't my motion.

THE COURT: You haven't even waited until we got to the end of this. You don't know whether he is ineffective or not. Do you?

You think he was ineffective because you were found guilty.

THE DEFENDANT: No, ma'am.

THE COURT: Point out his ineffectiveness?

THE DEFENDANT: I feel as though he didn't properly prepare.

THE COURT: How? Where was he improper.

THE DEFENDANT: *He never visited me* to get all the facts.

THE COURT: This is not a social affair.

(Emphasis added.) Under further prodding by the court, appellant testified that trial counsel had failed to investigate an eyewitness, Doris (mentioned by the bartender, the Com-

monwealth's only eyewitness, during his trial testimony). The court discredited this allegation, as appellant did not know her last name or address, before telling appellant to be seated and directing trial counsel to proceed.

With regard to the use of a private investigator, trial counsel waited nine months after receiving authorization on May 25, 1989, until February 21, 1990, five days before jury selection, to consult with an investigator. Compounding this dilatory performance, trial counsel did not instruct the investigator to seek eyewitnesses, but told him only to interview three specific character witnesses. The investigator located two of the three, both of whom were complimentary toward appellant and were willing to testify. One of them, a clergyman who had employed appellant on a recurring basis over a period of years, would have testified that appellant was "a very nice person who was quiet and a good worker," who "kept in contact ... almost on a daily basis to secure work." Trial counsel then failed to interview either of the two witnesses located by his investigator, instructed him not to subpoena them, and disdained to call them to testify at appellant's trial or death penalty hearing. Appellant asserts an absolute right to have his counsel attempt to interview Commonwealth witnesses, such as Smith, and to attempt to locate other witnesses, such as Doris, through them.

Appellant argues, with reference to suppression of evidence, that trial counsel should have sought to suppress: identification by eyewitness Smith, who was nearly blind; the fruits of the warrantless entry into appellant's apartment; and an admission he made to police at time of his arrest. Appellant claims that he was clearly prejudiced by his attorney's failure to interview him prior to trial and the failure to litigate a meritorious motion to suppress identifications, physical evidence, and statements.

Trial counsel's failure to prepare for the death penalty hearing is even more striking. At the post-verdict motions hearing, quoted above, defense counsel admitted the incomprehensible fact that on February 22, 1990, four days before jury selection, he was unaware that appellant's was a capital

case.[1]  He did not request a continuance or other appropriate relief when he belatedly learned that the Commonwealth was seeking the death penalty.  Thus, on the eve of trial, counsel was unaware that his client faced the death penalty, apparently considered it a routine case which in his view did not require an interview with his client, and could not prepare for a death penalty hearing since he did not know it was a capital case.  Thus he did not interview the character witnesses discovered by his investigator, nor subpoena them to testify for his client.  Finally, he presented a travesty of a case at the death penalty hearing, which consisted of the following:

(Curry Perry, having been sworn, testifies as follows:)

BY MR. JACKSON [defense counsel]:

Q.  Again state how much you had to drink on August the 7th of 1987.

A.  Approximately a fifth and a half of whiskey.

Q.  What occurred between you and Mr. Schuler?

A.  An argument and a fight.

MR. JACKSON:  I have no further questions.

MR. PERRICONE:  I have no questions, your Honor.

The record establishes that this singular presentation constituted the entire defense case in appellant's death penalty hearing.

The threshold inquiry in a claim of ineffective assistance of counsel is whether there is arguable merit to the claim that counsel's performance was substandard or deficient.  If the claim is arguably meritorious, then the inquiry shifts to whether the course chosen by counsel had some reasonable basis designed to effectuate his client's interests.  If no such reasonable basis is found, then the client must show that counsel's action or inaction prejudiced him.  That is, there must be a reasonable probability that the result of the trial

1.  Pa.R.Crim.P. 352, which requires the Commonwealth to give notice of aggravating circumstances to a defendant in a capital case at or before the time of arraignment, was adopted February 1, 1989, but was effective as to cases in which the arraignment is held on or after July 1, 1989.  Appellant's arraignment occurred on April 26, 1989, so the rule was not applicable in his case.

would have been different but for counsel's errors. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

Applying this standard to counsel's representation in this case leads inexorably to the conclusion that trial counsel was constitutionally ineffective and that appellant must be granted a new trial. There is no question that appellant's underlying allegations of ineffectiveness—failure to interview appellant prior to trial, failure to prepare for trial, failure to use his investigator, unawareness that he was defending a capital case, and failure to prepare for the death penalty hearing—have merit. Counsel's failure to interview witnesses was ineffective, arguably per se: *See Commonwealth v. Weiss*, 530 Pa. 1, 606 A.2d 439 (1992); *Commonwealth v. Jones*, 496 Pa. 448, 437 A.2d 958 (1981); *Commonwealth v. Mabie*, 467 Pa. 464, 359 A.2d 369 (1976).

The second prong of establishing ineffectiveness of counsel—whether counsel had a reasonable basis for his performance—requires little reflection and scant discussion. It is not even arguable that counsel's failure to utilize his investigator for nine months until the eve of trial could have had any reasonable basis designed to effectuate his client's interest. The other allegations of ineffectiveness, fitting broadly under the rubric of failure to prepare for trial, are not even arguably reasonable tactics serving some broad strategic plan for the defense. Failure to prepare is not an example of forgoing one possible avenue to pursue another approach; it is simply an abdication of the minimum performance required of defense counsel. It is not possible to provide a reasonable justification for appearing in front of a death penalty jury without thorough preparation.

Finally, *Pierce* requires that appellant demonstrate prejudice flowing from counsel's ineffective representation. Again, we do not think extensive analysis necessary to perceive the prejudice to appellant's defense. There is a reasonable probability that counsel's failure to interview his own client, failure to investigate a potential eyewitness, gross inattention to the capital nature of his client's plight, failure to

prepare for the penalty phase of trial, failure to present known character witnesses,[2] and presentation of such a pitiful parody of a defense case at the penalty hearing, in combination, affected the outcome of the trial. This is a case in which the evidence might have supported a lesser degree of homicide than first degree murder; it is also a case in which a death penalty jury might have rendered a verdict of life imprisonment if appellant's counsel had presented character witnesses and other mitigating factors such as appellant's National Guard service, adult educational endeavors, and employment history. It therefore seems quite clear that the result of the trial might have been different were it not for counsel's errors.

Appellant has established the ineffectiveness of his defense counsel and is thus entitled to a new trial.

Judgment of sentence vacated, and case remanded for new trial.

LARSEN, J., did not participate in the decision of this case.

NIX, C.J., concurs in the result.

MONTEMURO, Senior Justice, was an appointed justice of the court at the time of argument.*

2. *See Commonwealth v. Weiss*, 530 Pa. 1, 8, 606 A.2d 439, 442 (1992) (failure to call character witnesses was ineffective assistance of counsel when based on counsel's failure "to interview and prepare potential character witnesses, and consult with his client thereto.")

* Mr. Justice Montemuro is sitting by designation as senior justice pursuant to Judicial Assignment Docket No. 94 R1801, due to the unavailability of Mr. Justice Larsen; see No. 127 Judicial Administration Docket No. 1, filed October 28, 1993.