J-S29009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KEITH WILLIAMS | : | |
| | : | |
| Appellant | : | No. 176 EDA 2021 |

Appeal from the PCRA Order Entered December 17, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008622-2009

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.:        **FILED DECEMBER 22, 2021**

Keith Williams appeals from the Philadelphia Court of Common Pleas'
order dismissing his first petition filed pursuant to the Post Conviction Relief
Act ("PCRA"), 42 Pa. C.S.A. §§ 9541-9546, without holding an evidentiary
hearing. Williams alleges on appeal that trial counsel was ineffective for
allowing Williams to waive his right to a jury trial and to proceed with
sentencing because he was incompetent. He also alleges appellate counsel
was ineffective for failing to argue that the evidence was insufficient to support
his convictions for indecent assault by forcible compulsion and unlawful
contact with a minor. In the alternative, Williams maintains that the PCRA

_____

[*] Former Justice specially assigned to the Superior Court.

court should have held a hearing on these claims before denying him relief. As we conclude that all of Williams's claims lack merit, we affirm.

The facts underlying Williams's convictions are not in dispute. On the morning of March 16, 2009, fifteen-year-old D.L. and fourteen-year-old J.M. were exiting a deli in Philadelphia when they saw Williams making sexual gestures in their direction. He was gyrating his hips and saying "come here, baby." N.T. Trial, 6/14/10, at 41, 71. D.L. and J.M. began walking back to their high school, and Williams followed behind them. Once the girls got to their high school, they ran up the steps to the school and J.M. began banging on the locked door of the school. Williams followed the girls up the steps and backed D.L. into the wall. He pressed his penis against D.L.'s inner thigh, rubbed his stomach against her chest and began unbuckling his belt, all the while repeatedly telling D.L. to "give me some pussy." *Id*. at 74.

Moments later, the assistant dean at the high school, Aziz Collins, opened the door. Williams backed off of D.L., and D.L. ran inside the school along with J.M. Collins escorted Williams off the school property, and Williams mooned Collins as he walked down the block. Williams was subsequently arrested and charged with multiple offenses in relation to this incident.

On the day scheduled for trial, the Commonwealth informed Williams that there was an outstanding offer for a sentence of 17 ½ to 35 years in exchange for a guilty plea from Williams. *See id.* at 23. The court and the Commonwealth asked Williams if he understood that if he went to trial and

was convicted of certain offenses, he would face a mandatory life sentence pursuant to 42 Pa.C.S.A. § 9718.2(a)(2) because he had two previous convictions for attempted rape. *See id.* at 6, 18-19, 24. Williams assured the court that he understood. *See id.* at 6-7, 24. Williams refused the offer. *See id.* at 25. He stated that he wanted to proceed to trial, and that he wished to waive his right to a jury trial. *See id.* at 13.

Following a break of approximately one hour, the court asked Williams if he had spoken to his attorney and completed a written colloquy regarding his decision to waive his right to a jury trial and Williams said that he had. *See id.* at 26, 35. The court then colloquied Williams regarding his waiver. *See id.* at 27-35. Following the colloquy, the court accepted Williams's jury trial waiver, stating that "I do believe that [ ] Williams does understand his rights." *See* N.T. Trial, 6/14/10, at 35.

The case immediately proceeded to the waiver trial. D.L., J.M. and Collins all testified at the non-jury trial. D.L. testified about her encounter with Williams on March 16, 2009, and that she had tried unsuccessfully to push Williams off of her during the attack. *See id.* at 74-75. D.L. testified that she subsequently identified Williams as the assailant in a line-up, and she also positively identified Williams as the assailant while testifying in court. *See id at.* 70, 83. J.M. and Collins likewise testified that they had identified Williams as the assailant during the investigation of the attack and also positively identified Williams as the assailant in court. *See id.* at 38, 53, 92-93, 104-

- 3 -

105, 106. The Commonwealth also introduced a videotape from D.L.'s and J.M.'s high school, which showed Williams following the girls up the stairs on the morning of March 16, 2009. Following trial, the trial court convicted Williams of multiple offenses, including indecent assault by forcible compulsion, corruption of minors and unlawful contact with a minor.

The trial court continued sentencing so that a presentence investigation report with a mental health assessment and a competency examination could be completed. **See id.** at 152. On January 31, 2011, the trial court imposed a mandatory sentence of life imprisonment for the unlawful contact and indecent assault convictions pursuant to Section 9718.2(a)(2). The court did not impose any further penalty on the remaining convictions. Williams filed a direct appeal with this Court, presenting the singular issue that Section 9718.2(a)(2) violated his constitutional rights. We rejected this claim, and consequently affirmed Williams's judgment of sentence. **See Commonwealth v. Williams**, 487 EDA 2011, 47 A.3d 1260 (Pa. Super. 2012) (non-precedential memorandum).

Williams then filed a timely *pro se* PCRA petition. Appointed counsel filed an amended PCRA petition, alleging that trial counsel had been ineffective for allowing Williams to waive a jury trial and proceed to sentencing when he was incompetent and for failing to present the court with psychiatric records to demonstrate that incompetence. In the petition, Williams also asked the court to provide funds for a court-appointed investigator to investigate Williams's

mental health background. The court entered an order appointing an investigator and providing funds for the investigation.

Appointed counsel later withdrew for health reasons.[1] The PCRA court appointed new counsel, who filed a second amended PCRA petition. In that petition, counsel essentially adopted the competency issue previously raised in the first amended petition and added a claim that appellate counsel had been ineffective for failing to challenge the sufficiency of the evidence supporting the indecent assault and unlawful contact convictions. The Commonwealth filed a motion to dismiss the petition, and the PCRA court filed a notice of its intent to dismiss the PCRA petition without a hearing pursuant to Pa.R.Crim.P. 907. Williams did not respond to the notice, and the PCRA court dismissed the petition on December 17, 2020.

The PCRA court filed an opinion in support of its order dismissing the petition. In the opinion, the court rejected the ineffectiveness claim based on allegations of Williams's incompetency because it found that Williams had been competent to waive his right to a jury trial and to proceed to sentencing. In support, the court noted that Williams had completed a written colloquy waiving his right to a jury trial, and had been fully colloquied by the court regarding that waiver. The court also noted that the court itself had ordered

_____

[1] In his motion to withdraw as counsel, PCRA counsel also gave an update on the investigation. He essentially reported that, despite his efforts to do so, he had not been able to obtain the necessary information from Williams to pursue an investigation on his mental health background.

multiple mental health evaluations and those evaluations all found Williams to be competent. The court further rejected Williams's claim that the evidence had been insufficient to support the convictions for indecent assault and unlawful contact. This timely appeal followed.

When this Court reviews an order dismissing a PCRA petition, our review is limited to examining whether the PCRA court's determinations are supported by the record and the court's decision is free of legal error. *See Commonwealth v. Shaw*, 217 A.3d 265, 269 (Pa. Super. 2019). We give great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. *See Commonwealth v. Benner,* 147 A.3d 915, 919 (Pa. Super. 2016). However, we apply a *de novo* standard of review to the PCRA court's legal conclusions. *See id.*

Williams raises two claims challenging trial counsel's effectiveness and one claim challenging appellate counsel's[2] effectiveness. Counsel is presumed to have been effective. *See Commonwealth v. Brooks*, 839 A.2d 245, 248 (Pa. 2003). In order to overcome that presumption and prevail on a claim of ineffectiveness, Williams must establish that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for his conduct; and (3) he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable

---

[2] Williams was represented by the same counsel at trial and on direct appeal.

probability that because of the act or omission in question, the outcome of the proceeding would have been different. *See id*.

Williams first argues in his appeal that trial counsel was ineffective for allowing him to waive his right to a jury trial because, according to Williams, he was not competent to make an intelligent, knowing and voluntary decision to do so. He further maintains that counsel should have produced documentation regarding Williams's mental health background to support a finding of incompetency. This claim fails.

Williams, like all defendants, was presumed to be competent to stand trial and bore the burden of proving otherwise at the time of trial. *See Commonwealth v. Bomar,* 104 A.3d 1179, 1196 (Pa. 2014). To prove he was incompetent, Williams was required to show that he was unable to understand the nature of the proceedings or participate in his defense. *See id.* Williams's specific claim is that he was not competent to enter a knowing and intelligent waiver to his right to a jury trial. To make a knowing and intelligent waiver, Williams must have understood "the essential protections inherent in a jury trial as well as the consequences attendant upon a relinquishment of those safeguards." *Commonwealth v. Golinsky,* 626 A.2d 1224, 1227 (Pa. Super. 1993) (citations omitted).

Here, Williams completed a written waiver of his right to a jury trial. The court also fully colloquied him regarding this waiver. *See* N.T. Trial, 6/14/10, at 27-35. Williams told the court that he had been treated for mental illness

for years, and took medication for that mental illness, but he assured the court that he had taken his medication the night before and felt "clear in [his] thoughts." *See id.* at 8, 9, 12, 29-30. He also told the court that he was not having any trouble understanding the court or his attorney and that he would inform the court if anything changed. *See id.* at 9. The court also made clear that it had ordered multiple mental health evaluations, and had asked two doctors to specifically assess whether Williams was "competent to make the decision to reject the non-mandatory sentence," *i.e.* the guilty plea, and both doctors concluded that Williams was competent. N.T. sentencing, 1/31/11, at 33; *see also id.* at 11-13.

Despite all of this, Williams asserts that his behavior during the court's colloquy, where he continued to profess his innocence and complain about the line-up and his high bail, demonstrates that he did not understand what it meant to waive his right to a jury trial. In rejecting this claim, the PCRA court stated:

> Throughout [his colloquy], Williams made statements contesting the proffered evidence of the Commonwealth and requesting that his bail be lowered, however, his statements do not support a finding of incompetence nor an inability to provide a knowing and intelligent wavier of his right to a jury trial. Rather, the statements simply reflect his unwillingness to accept the proffered evidence and his belief that he should not be found guilty of all charges. The record is clear that trial counsel had no basis upon which to object to Williams'[s] waiver of his right to a jury trial and Williams has never presented this Court with any mental health records - at the time of trial or during the lengthy period of this PCRA - to support the instant assertion of incompetence. Accordingly, trial counsel cannot be deemed ineffective.

PCRA Court Opinion, 12/17/10, at 7.

We see no error in the PCRA court's determination that Williams was competent to make a knowing and intelligent waiver of his right to a jury trial, and therefore that counsel was not ineffective in this regard. **See Commonwealth v. Spotz**, 896 A.2d 1191, 1210 (Pa. 2006) (stating that counsel cannot be deemed ineffective for failing to raise a meritless claim). And while Williams now claims that trial counsel should have produced some unidentified evidence of his mental health history to the trial court in order to prove Williams's incompetence, he has not, as the Commonwealth points out, "proffer[ed] any such evidence that he believed trial counsel should have found, as was his burden." Commonwealth's Brief at 8. In fact, Williams has not provided "any mental health records at all to support his post-conviction claim," even though he is the one with the burden to include affidavits, documents or other evidence showing facts warranting relief. **See id**. at 9; Pa.R.Crim.P. 902 (A)(12). Based on all of the above, we agree with the PCRA court that Williams has not shown that counsel was ineffective in regards to Williams's waiver of his right to a jury trial.

Williams also claims that he was incompetent to proceed to sentencing, and trial counsel was ineffective for allowing him to do so. This claim also fails.

Here, the trial court "made a full record of all of the mental assessments conducted over the extended period that this matter was pending before the court." PCRA Court Opinion, 12/17/10, at 8. As noted above, the court ordered

multiple mental health evaluations in an effort to ensure that Williams was competent. *See* N.T. Sentencing, 1/31/11, at 11-13, 16, 34. All of the assessments found Williams competent. *See id*. at 13, 22, 34.[3] The PCRA court concluded that, given all of these assessments, and in light of the fact that Williams had never presented the court with any mental health records contradicting those assessments' conclusion that Williams was competent, it could not find that trial counsel had any basis upon which to object to the court proceeding with sentencing.

Williams counters that his behavior and outbursts at his sentencing hearing, which compelled the court to gag and then remove Williams from the courtroom, showed that he was incompetent. The PCRA court rejected this argument:

> While Williams did have outburst[s] in the courtroom, his statements were not disconnected from the proceeding, as they were made in anger with the Court and counsel and with a continued lack of acceptance of his guilt.

PCRA Court Opinion, 12/17/20, at 8. The court reiterated that following the outbursts, it listed the mental health evaluations that had been conducted and that each of those evaluations concluded Williams was competent. *See id.*

---

[3] The certified record does not contain the actual mental health evaluations. However, at no point does Williams dispute that several mental health evaluations were conducted and that each of those evaluations found him competent. Moreover, the record reflects that one of the mental health evaluations was done forthwith, and that the subsequent finding of competence was reported to the court verbally. *See* N.T. Sentencing, 1/31/11, at 16-17.

Again, we see no error in the PCRA court's conclusion that Williams was competent to proceed to sentencing. We add that the record reflects the trial court's extensive and conscientious efforts to make sure that Williams was competent to proceed, and was repeatedly assured by those charged with evaluating Williams's mental health that he was. Williams has not produced any evaluations, reports or documents showing otherwise. No relief is due.

In his last claim of ineffectiveness, Williams alleges appellate counsel was ineffective for failing to argue on direct appeal that the evidence was insufficient to support his convictions for indecent assault and unlawful contact with a minor. We agree with the PCRA court that the record supports both of these convictions, and counsel was therefore not ineffective for challenging their sufficiency on appeal.

Evidence presented at trial is sufficient when, viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence and all reasonable inferences derived from the evidence are sufficient to establish all the elements of the offense beyond a reasonable doubt. *See Commonwealth v. Blakeney,* 946 A.2d 645, 651 (Pa. 2008). The fact-finder passes upon the weight and credibility of each witness's testimony, and is free to believe all, part or none of the evidence. *See Commonwealth v. Ramtahal*, 33 A.3d 602, 607 (Pa. 2011).

To prove Williams committed indecent assault by forcible compulsion, the Commonwealth was required to show that Williams had indecent contact

with D.L. by forcible compulsion or by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution. *See* 18 Pa. C.S.A. § 3126 (a)(2)-(3). Indecent contact means any touching of the sexual or other intimate parts of a person for the purpose of arousing or gratifying sexual desire. *See* 18 Pa. C.S.A. § 3101. Meanwhile, to prove Williams committed unlawful contact with a minor, the Commonwealth had to show that Williams was intentionally in contact with a minor in order to commit a sexual offense listed in Chapter 31 of the Crimes Code. *See* 18 Pa. C.S.A. § 6318(a)(1).[4]

In concluding that the Commonwealth had proven both of these offenses at trial, the PCRA court explained that the evidence showed that:

> Williams initiated contact with [D.L.] (age 15) and [J.M.] (age 14) … by making sexual gestures and saying 'Come here, baby" and subsequently following them for a block and [a] half to their school. … Williams followed the girls up the [school's] steps where he physically confined [D.L.] (age 15) up against the wall in a position from which she could not escape and began pressing his penis against her inner thigh, rubbing his stomach against her chest, and unbuttoning his belt while repeatedly saying "Give me some pussy." … [This] evidence was more than sufficient to sustain Williams'[s] convictions.

PCRA Court Opinion at 13-14.

We discern no error in this conclusion. Williams, however, finds fault in the court's conclusion on several grounds, first arguing that the evidence was insufficient to support an indecent assault conviction because both Williams

---

[4] There is no dispute that indecent assault is a Chapter 31 sexual offense. *See* 18 Pa.C.S.A. § 3126.

and D.L. had all of their clothes on and D.L. never saw Williams's penis. This claim is meritless. As the Commonwealth points out, the Commonwealth is not required to show skin-to-skin contact in order to sustain a conviction for indecent assault. **_See Commonwealth v. Ricco_**, 650 A.2d 1084, 1085-1086 (Pa. Super. 1994) (rejecting the appellant's argument that the indecent assault statute requires direct skin-to-skin contact and holding that the involuntary placement of the victim's hand over the clothed genitals of the appellant was sufficient evidence of indecent assault).

Williams also asserts that the evidence was insufficient to support an indecent assault conviction because he did not touch D.L.'s breasts, buttocks or genitalia and there was no evidence his actions were sexually motivated. Again, as the Commonwealth observes, this Court has previously rejected such a claim. **_See Commonwealth v. Capo_**, 727 A.2d 1126, 1127 (Pa. Super. 1999) (rejecting the argument that the appellant could not be convicted of indecent assault because he had not touched the victim's breasts, buttocks or genitalia and his actions were therefore not sexually motivated). We add that Williams's contention that there was no evidence that his actions were sexually motivated is completely specious in light of the evidence that he pinned a young girl up against the wall, pressed his penis into her inner thigh, began unbuckling his belt and repeatedly yelled "Give me some pussy."

Lastly, Williams argues that the evidence was insufficient to support the convictions because the videotape only showed Williams on the steps of the

school and did not capture the actual assault. Of course, this claim lacks merit because both D.L. and J.M. testified about the assault and a complainant's testimony is in and of itself sufficient to support a conviction for a sexual offense. *See Commonwealth v. Castelhun*, 889 A.2d 1228, 1232 (Pa. Super. 2005).

As Williams has failed to demonstrate any error in the court's determination that the evidence was sufficient to support his convictions, his claim that appellate counsel was ineffective for failing to raise this meritless claim necessarily fails. *See Spotz*, 896 A.2d at 1210.

Williams asserts, in the alternative, that the PCRA court should have at least held an evidentiary hearing on his claims before dismissing his petition. In support of his claim in his argument section, Williams merely summarizes general law regarding when a PCRA petitioner is entitled to a PCRA hearing, without attempting to apply the facts of his case to that law. Given this deficiency, this claim is waived. *See* Pa.R.A.P. 2119; *Commonwealth v. Williams*, 959 A.2d 1252, 1258 (Pa. Super. 2008) (stating that an issue is waived when it is not sufficiently developed in an appellant's brief). Even if we were to overlook waiver, the claim is without merit.

As Williams concedes in his brief, a petitioner is not entitled to a PCRA hearing as a matter of right. *See Commonwealth v. Shaw,* 217 A3d 265, 269 (Pa. Super. 2019). The PCRA court can decline to hold a hearing if there is "no genuine issue concerning any material fact, the petitioner is not entitled

to PCRA relief, and no purpose would be served by any further proceedings." *Id*. A PCRA court is therefore not required to hold an evidentiary hearing on an ineffectiveness claim if it determines the underlying issue lacks arguable merit. *See Commonwealth v. Baumhammers*, 92 A.3d 708, 726-727 (Pa. 2014).

Here, the PCRA court determined that Williams was not entitled to relief on any of the claims he raised because they lacked arguable merit. As discussed above, we do not discern any error on the part of the PCRA court's conclusion that Williams's claims lacked merit, and we therefore conclude that the court did not abuse its discretion in declining to hold a hearing on those meritless claims. *See id*.; *Commonwealth v. Maddrey*, 205 A.3d 323, 327 (Pa. Super. 2019) (stating that the decision to deny PCRA relief without holding a hearing is within the discretion of the PCRA court and will not be overturned in the absence of an abuse of that discretion).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/22/2021