J-S58024-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| JULIO A. BONILLA | |
| Appellant | No. 2130 MDA 2015 |

Appeal from the PCRA Order November 18, 2015
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-CR-0000680-2010

BEFORE:  GANTMAN, P.J., BOWES, and PLATT,* JJ.

MEMORANDUM BY BOWES, J.:                    **FILED NOVEMBER 29, 2016**

Julio A. Bonilla appeals from the November 18, 2015 order denying his PCRA petition following an evidentiary hearing.  After thorough review, we affirm.

Appellant was charged with first-degree murder and two counts of aggravated assault arising out of a street fight on Willow Street in Lebanon City on March 25, 2010.  Appellant threatened one victim with a knife and fatally stabbed Kenny Echevarria multiple times with that weapon. Immediately after the stabbing, he fled to Vineland, New Jersey, and was arrested there on March 26, 2010.

_____

* Retired Senior Judge assigned to the Superior Court.

On December 1, 2010, Appellant entered a negotiated guilty plea to the charges and was sentenced to twenty to forty years in prison. Thereafter, Appellant filed a PCRA petition. He successfully challenged his plea, and his sentence was vacated. Attorney Erin Zimmerer was appointed to represent him at a trial. Counsel filed numerous pre-trial motions on Appellant's behalf. Following a four-day trial, where thirty-one witnesses testified, the jury found Appellant guilty of all charges and the court sentenced him to life imprisonment.[1]

Appellant filed post-trial motions, which were denied. He then filed a direct appeal to this Court but was denied relief. ***Commonwealth v. Bonilla***, 2013 Pa. Super. Unpub. LEXIS 1826 (Pa.Super. 2013). The Supreme Court denied allowance of appeal. ***Commonwealth v. Bonilla***, 86 A.3d 231 (Pa. 2014). Appellant timely filed the instant PCRA petition raising multiple claims of trial counsel's ineffectiveness. The court appointed counsel and held an evidentiary hearing on October 29, 2015. Appellant testified on his own behalf and, in addition, he presented the testimony of three witnesses he characterized as material, but who were not called to testify at trial: Emmanuel Ortega, Carmen Irizarry, and Julio Bonilla, Sr. On November 18, 2015, the PCRA court denied relief.

_____

[1] Appellant received a concurrent five to ten year sentence of imprisonment on the assault convictions.

Appellant timely filed the within appeal and complied with the PCRA court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. The PCRA court authored its Pa.R.A.P. 1925(a) opinion, and the matter is ripe for our review. Appellant presents four questions:

    A. Whether the trial court erred in not finding Appellant's trial counsel ineffective for failing to identify and call material witnesses who could have provided exculpatory testimony at trial, specifically Emmanuel Ortega, Carmen Irizarry, and Julio Bonilla, Sr.

    B. Whether the trial court erred in not finding Appellant's trial counsel ineffective for failing to obtain and play the 911 call [Appellant] made after the murder at trial.

    . . . .

    [C.] Whether the trial court erred in not finding Appellant's trial counsel ineffective for failing to seek suppression of a knife and photographs of a [sic] various knives, and failed to object to their admission during trial.

    . . . .

    [D.] Whether the trial court erred in its decision denying Appellant's Petition for Post-Conviction Relief.

Appellant's brief at 4.[2]

_____

[2] Appellant withdrew two issues from our consideration that were contained in his Pa.R.A.P. 1925(b) statement and listed in his Statement of Questions. *See* Appellant's brief at 32, 35.

When we review the denial of post-conviction relief, we are "limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." **Commonwealth v. Smith**, 121 A.3d 1049, 1052 (Pa.Super. 2015). Our "review is limited to the findings of the PCRA court and the evidence of record" and we view the latter "in the light most favorable to the prevailing party at the PCRA level." **Commonwealth v. Rykard**, 55 A.3d 1177, 1183 (Pa.Super. 2012). While we will not disturb the factual findings of the PCRA court unless they are unsupported, we afford no deference to its legal conclusions. "Where the issue is a question of law, our standard of review is *de novo* and our scope of review is plenary." **Commonwealth v. Henkel,** 90 A.3d 16, 20 (Pa.Super. 2014).

In order to prevail, the petitioner must demonstrate: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for the act or omission in question; and (3) he suffered prejudice as a result of counsel's deficient performance. **Commonwealth v. Steele**, 961 A.2d 786, 796-97 (Pa. 2008); **Commonwealth v. Stewart**, 84 A.3d 701, 706 (Pa.Super. 2013) (*en banc*). "A claim of ineffectiveness will be denied if the petitioner's evidence fails to satisfy any one of these prongs." **Commonwealth v. Elliott**, 80 A.3d 415, 427 (Pa. 2013).

The third prong, the prejudice aspect, involves a showing by a defendant that but for the act or omission in question, "there is a reasonable

probability that the outcome of the proceedings would have been different."

*Id*. at 427; **Steele**, **supra** at 360. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." **Commonwealth v. Rathfon**, 899 A.2d 365, 370 (Pa.Super. 2006).

With regard to the second prong, "Trial counsel . . . is presumed to have acted effectively and in his client's best interests[.]" **Commonwealth v. Hancharik**, 633 A.2d 1074, 1079 (Pa. 1993). In determining whether counsel had a reasonable basis for the course charted, "[t]he test is not whether other alternatives were more reasonable, employing a hindsight evaluation of the record," **Commonwealth v. Hawkins**, 894 A.2d 716, 730 (Pa. 2006), "but whether no competent counsel would have chosen that particular course of action, or the alternative not selected offered a greater chance of success." **Commonwealth v. Colavita**, 993 A.2d 874 (Pa. 2010). This test is an objective one, and counsel is effective if his decision had any reasonable basis. **Hawkins**, **supra**.

Regarding a claim that counsel was ineffective in failing to investigate and call witnesses, a petitioner must demonstrate:

> (1)the witness existed; (2) the witness was available; (3) trial counsel was informed of the existence of the witness or should have known of the witness' existence; (4) the witness was prepared to cooperate and would have testified on appellant's behalf; and (5) the absence of the testimony prejudiced appellant.

**Commonwealth v. Miller**, 868 A.2d 578, 581-82 (Pa.Super. 2005).

Appellant alleges that trial counsel was ineffective for failing to reasonably investigate and make an informed decision whether to call three witnesses, whom Appellant claims could have provided material and exculpatory testimony. Appellant maintains that, although he told counsel about Emmanuel Ortega[3] prior to trial, counsel failed to investigate, contact, or interview him, and she had no reasonable strategic basis not to do so. Appellant argues that Mr. Ortega's testimony was beneficial under *Commonwealth v. Perry*, 644 A.2d 705 (Pa. 1994), as it supported his claim of self-defense and may have resulted in a lesser degree of homicide.

Mr. Ortega further testified at the PCRA hearing that he lived with Appellant at the time of the fight. He was present the day before the fight when the victim threatened to kill Appellant and his family. N.T., 12/16/15, at 19. Mr. Ortega further testified that, although he did not witness the fight, Appellant entered his car on Willow Street immediately after the fight. Mr. Ortega described Appellant as shocked and scared, and Appellant asked Mr. Ortega to take him to a friend's house because he was being threatened. *Id*. at 12. Along the way, Appellant directed Mr. Ortega to stop at a pizza place so that Appellant could place a telephone call from a payphone.

---

[3] Mr. Ortega was known as Emmanuel Rodriguez-Arroyo, Emmanuel Orta-Rodriguez, and Emmanuel Arroyo. Trial counsel's notes did not contain any mention of an Emmanuel and counsel had no recollection of discussing an Emmanuel. N.T., 10/29/15, at 92.

Following that call, Mr. Ortega dropped off Appellant at a friend's home, picked up Appellant's family from their Willow Street residence, retrieved Appellant, and transported all of them to Appellant's brother's house in New Jersey. During that trip, they discussed Appellant turning himself in to police after he and his family were safe. Mr. Ortega maintained that he did not see a knife in Appellant's possession.

Mr. Ortega further testified that he was not contacted by trial counsel, but he would have been available to provide testimony at trial. He denied any familial relationship with Appellant and represented that he did not remain in contact with him after the murder. On cross-examination, Mr. Ortega admitted that Appellant is his sister's unofficial husband and the father of her children. *Id*. at 22. Despite the fact that Appellant told police that he threw the knife from the car window into a river on the way to New Jersey, Mr. Ortega stated he did not see Appellant throw anything out of the window and denied that he stopped the vehicle for that purpose. Upon his return from New Jersey, Mr. Ortega retrieved his clothing and went to Rochester.

The PCRA court did not find Mr. Ortega credible or his testimony exculpatory. Furthermore, it found Mr. Ortega's account of the trip to New Jersey inconsistent with Appellant's statement to police that he threw the knife into the river during that trip. In addition, the court credited Attorney

Zimmerer's testimony that she did not investigate Mr. Ortega because she was not apprised of his existence.

Appellant maintains that counsel knew of Mr. Ortega, but failed to locate him. Furthermore, he contends that Mr. Ortega's testimony was not internally inconsistent and did not contradict Appellant's testimony. Appellant argues that Mr. Ortega' s testimony would have been exculpatory or mitigating as it would have supported his claim that he acted in self-defense and fled in fear.

We cannot disturb the court's credibility determination. Furthermore, we agree with the PCRA court that the witness's testimony had little evidentiary value as the jury heard from Detective Walton that Appellant told him he fled the state in fear of retaliation. N.T. Trial, 4/11/12, at 76. Additionally, Appellant's sister Amarylis and his wife Sacha testified at trial that there were issues between Appellant and the victim in the days leading up to the fight and murder, and that the victim had threatened to kill Appellant. *Id*. at 128. Both of the women related that the victim and others attacked Appellant on the date in question. *Id*. at 111, 114. Appellant's wife testified that, after the stabbing, Appellant was nervous, upset, and crying. *Id*. at 130. Thus, Mr. Ortega's testimony, to the limited extent it was probative of the issue of self-defense, was cumulative of other testimony. Finally, the PCRA court credited Attorney Zimmerer's testimony that she was not apprised of Mr. Ortega. No relief is due.

Appellant alleges next that trial counsel was ineffective in failing to communicate with Carmen Irizarry. Appellant points to Ms. Irizarry's cooperation with his subpoena for the PCRA hearing as evidence that, had the witness been subpoenaed for trial, she would have cooperated and offered consistent testimony. Furthermore, he contends that Ms. Irizarry's testimony, if believed, would have bolstered his self-defense argument and, as in *Perry*, *supra*, would have supported a conviction of a lesser degree of homicide.

Ms. Irizarry was sitting with Norma Ortiz and Marie on Norma's front porch near the location of the fight.[4] She heard but did not see the fight. She testified that she recognized Appellant's voice crying for help three times and she detected fear in his voice. *Id*. at 40. Ms. Irizarry originally testified that no one contacted her about being a witness at trial. She subsequently changed her testimony and admitted that she did speak to someone regarding the events that night. She also added that she received a call from an attorney who left a message. *Id*. at 41-42. When asked whether she would have been available to testify at the April 2012 trial, Ms.

_____

[4] Norma Ortiz testified on behalf of the defense at trial. Ms. Ortiz stated that she saw four or five guys hitting the defendant with their fists while he was on the ground and she heard screaming. N.T. Trial, 4/11/12, at 62, 71. On cross-examination, she confirmed that Carmen Irizarry was a good friend of Appellant, and that an investigator working on behalf of the defense interviewed all three women at Ms. Irizarry's home regarding their observations of the fight. *Id*. at 64, 71.

Irizarry answered in the negative as she had undergone an operation at the time. She ultimately acknowledged that, had she been subpoenaed by Appellant, she would not have appeared due to her surgery. She remembered having her daughter notify the court that she could not appear at trial, although she did not recollect receiving any notice to appear.

Trial counsel Zimmerer testified that the defense spoke with Ms. Irizarry, but the woman was not willing or able to testify at trial as she had just undergone surgery. *Id*. at 94. Moreover, according to counsel, the witness told her that she did not remember anything from that night, and her daughter called counsel to reinforce that representation. *Id*.

Based upon the testimony of Attorney Zimmerer and Ms. Irizarry, the PCRA court concluded the witness was not willing and able to testify at the time of the trial. Furthermore, the court found Ms. Irizarry to be well-meaning but confused, and that her "marginally relevant" testimony would not have had any impact on the trial. PCRA Court Opinion, 11/18/15, at 9. Again, we find ample support in the record for the trial court's findings, and Appellant is not entitled to relief on this basis.

Julio Bonilla, Sr., Appellant's father, was in Puerto Rico at the time of the murder. He testified that his son telephoned him from New Jersey, reported what had happened, and that he was "crying, screaming." N.T., 11/29/15, at 47. His son related that "a situation had occurred . . . and he wanted to do everything correct and that they were trying to kill him and his

children and that he was really scared." *Id*. Appellant did not mention to his father that someone had been killed. Mr. Bonilla advised his son to get an attorney and turn himself over to police. He testified further that he provided counsel with Mr. Ortega's name and contact information. *Id*. at 52. Mr. Bonilla was sequestered in the hallway during trial, ready and willing to testify.

Counsel had a vague recollection that Mr. Bonilla was available and willing to testify, and that he was sequestered, but she did not call him to provide testimony as his story was inconsequential and had the potential to conflict with the testimony of another witness. The PCRA court agreed with counsel that, even assuming Mr. Bonilla's testimony would have been admitted over a hearsay objection, it was of little or no probative value, and thus, counsel was not ineffective in opting not to call him.

We agree that Appellant failed to demonstrate the prejudice required to satisfy the third prong of the ineffectiveness test. Furthermore, the record supports a finding that trial counsel made a reasonable strategic decision not to call Mr. Bonilla as a witness. We find no basis for finding counsel ineffective.

Next, Appellant contends that counsel was ineffective in failing to obtain and play for the jury the 911 call that he made after the murder. Appellant argues that his sister, his wife, his mother and father were in the courthouse and could have identified his voice. Furthermore, he submits

that, due to the timing of the call, just moments after the event, together with the stress and fear in his voice, the jury would have overlooked the fact that he did not identify himself or his victim. Appellant analogizes such evidence to that of character witnesses in *Commonwealth v. Weiss*, 606 A.2d 439, 443 (Pa. 1992).

Mr. Bonilla and trial counsel both confirmed that counsel was in possession of the 911 tape prior to trial. N.T., 11/29/15, at 71. In addition to potential authentication issues, counsel testified that she made a strategic decision not to play the tape because she believed Appellant's refusal to identify himself or the victim, together with the fact that he hung up on the 911 operator, was incriminating. *Id*. Counsel believed the best use of the evidence was letting the jury know that Appellant voluntarily made the 911 call without having to play it, a strategy counsel deemed the "best of both worlds." PCRA Court Opinion, 11/18/15, at 12. The PCRA court saw no basis to impugn counsel's strategic decision, and furthermore, characterized it as "totally correct" and expressed its agreement that playing the 911 call would have been harmful. *Id*.

We concur that counsel's decision not to play the 911 call for the jury was a reasonable one, a strategy other competent counsel may have employed in similar circumstances. Furthermore, Appellant cannot demonstrate any prejudice as the jury was apprised that he made the call and reported the stabbing, which was the positive aspect of the evidence,

without the downside of proof of his refusal to identify himself. This claim is meritless.

Next Appellant alleges that the trial court erred in not finding counsel ineffective for failing to seek suppression of a knife and photographs of knives, and failing to object to their admission at trial. Appellant argues the admission of photographs of multiple knives in his home was prejudicial, as it "allowed the inference to be presented to the jury that Appellant was prepared for somebody to come after him, which significantly impairs his self-defense argument." Appellant's brief at 34. Moreover, he claims that counsel had no reasonable basis for failing to object.

Counsel testified that she did not believe the photographs of knives, many of them common kitchen knives, were probative or prejudicial as the evidence established that the knives had been tested and ruled out as the murder weapon. Furthermore, the jury was aware that the knife that was introduced into evidence was not the murder weapon. The PCRA court concluded that any prejudice from their admission was outweighed by the fact that the exhibits merely confirmed that "everyone has multiple knives in their houses." PCRA Court Opinion, 11/18/15, at 13. We agree, and find no prejudice.

Appellant's final claim is that the PCRA court erred in denying his PCRA petition. In support of this contention, Appellant argues that he was prejudiced by the cumulative effect of counsel's various failings. He cites

*Commonwealth v. Mason*, 130 A.3d 601, 674 (Pa. 2015), in support of his contention that prejudice should be premised upon the cumulative effect of trial counsel's multiple deficiencies. However, the law is to the contrary. Herein, as in *Mason*, where all of Appellant's ineffectiveness claims were found meritless, "no cumulative prejudicial effect could have attained." *Id*. (quoting *Commonwealth v. Thomas*, 44 A.3d 12, 25 (Pa. 2012)).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/29/2016