J-S04028-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEVIN THOMAS COOPER | : | |
| | : | |
| Appellant | : | No. 1151 MDA 2018 |

Appeal from the PCRA Order Entered January 24, 2018
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0001463-2015

BEFORE: SHOGAN, J., OTT, J., and STEVENS[*], P.J.E.

MEMORANDUM BY OTT, J.: **FILED APRIL 26, 2019**

Devin Thomas Cooper appeals, *nunc pro tunc*, from the order entered on January 24, 2018, denying his first petition filed pursuant to the Pennsylvania Post Conviction Relief Act (PCRA).[1] Cooper seeks relief from the judgment of sentence of 3½ to 7 years' imprisonment, with 2 years' consecutive probation, imposed after a jury convicted Cooper of one count each of sexual assault, criminal trespass, false imprisonment, and simple assault.[2] Cooper contends the PCRA court erred in denying relief where trial counsel was ineffective because: (1) he failed to conduct an adequate pre-

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541–9546.

[2] 18 Pa.C.S.A. §§ 3124.1, 3503(a)(1)(i), 2903(a), and 2701(a)(1), respectively.

trial investigation; (2) he failed to call eight fact witnesses; (3) he failed to call character witnesses; and (4) he failed to obtain and introduce certain evidence at trial. *See* Cooper's Brief at 4. Based on the following, we affirm.

We take the underlying facts and procedural history in this matter from this Court's decision on direct appeal and our review of the certified record:

> The events relevant to this case occurred on the morning of May 27, 2015, when [the victim] was attacked in her apartment. [The victim] and [Appellant] previously were involved in a romantic relationship over the course of two years and have a daughter together. At approximately [eight] in the morning, while [the victim] was preparing for work, the power to her apartment shut off. After the power went out, [the victim] looked out her window and noticed a truck that she believed belonged to her landlord in the apartment complex parking lot. Just outside of the front door to [the victim's] apartment is the electrical utility room for the apartment complex. Neither the external door leading into the complex nor the door to the electrical utility room were customarily kept locked. While she was looking out of the window to her apartment, [the victim] heard a knock on her door. Believing her landlord might have been working on electrical repairs, [the victim] walked to her front door and twisted the doorknob to unlock it. Upon opening the door enough to look out, [the victim] saw that [Appellant] was in the hallway. Though she tried to close the door, [Appellant] forced his way into her apartment. Once inside the apartment, [Appellant] grabbed [the victim] by the arms. [The victim] broke away and retreated to her bedroom to obtain her phone in order to call for help. [Appellant] pursued her and a struggle broke out over the phone. During this struggle, [Appellant] grabbed [the victim] and placed his hands over her mouth and throat, making it difficult for her to breath[e]. He eventually pushed her face-down onto the floor and sat on her back, alternatively reading texts on her phone and

- 2 -

suffocating her by placing his hands over her mouth and nose when he read a text that angered him. Eventually [Appellant] got up off of [the victim] and allowed her to get up. Around this time [the victim's] phone was ringing as her manager and co-worker were calling her because she was late for her work shifted [sic] which started at 9:45 a.m.

[Appellant] remained in the apartment after allowing [the victim] to get up off of the floor[,] claiming he wanted to see his daughter. At this time, [the victim] went into the living room to change her pants, as the pants she was wearing were covered in dog hair from being on the floor. [Appellant] followed her into the living room, pushed [the victim] onto the couch, and proceeded to pull down her underwear and pants while also undoing his own pants. [Appellant] then proceeded to have sexual intercourse with [the victim], despite her verbal protestations. When he was finished, [Appellant] went into the daughter's room and changed her diaper while [the victim] finished getting dressed. At this point [Appellant] allowed [the victim] and their daughter to leave and walked outside with them to [the victim's] car. [The victim] got into her car, called 911, and started driving to her aunt's house. During the call she spoke with Officer [Richard] Grove who told her to go to the Carlisle Hospital. At the hospital [the victim] met Officer Grove and submitted herself to a rape kit examination, which included a vaginal swab and photographs of any bruising or markings on [her] body. [The victim] had markings and bruises on her arms, chest, and face.

Later that evening [the victim] went to the police station and filed a written report on the incident. At the urging of Officer Grove, [the victim] called [Appellant] from the police station and allowed the call to be recorded. [Appellant] was subsequently arrested and charged with the above captioned offenses.

At trial, [the victim] testified that, over the course of their previous relationship, [Appellant] had physically

assaulted and threatened her. Specifically, she briefly testified that he tackled her to the ground when she was six months pregnant and, at a different time, attempted to put her hands in a ceiling fan. Partially as a result of these prior actions, [the victim] took the [Appellant's] threats seriously.

(Trial Court Opinion, 7/15/16, at 2-5) (footnote omitted).

On August 21, 2015, the Commonwealth filed a criminal information charging Appellant with two counts of rape, and one count each of burglary, sexual assault, criminal trespass, terroristic threats, false imprisonment, and simple assault. Immediately prior to the start of trial, on October 26, 2015, Appellant moved to exclude all evidence of prior violent episodes during his relationship with the victim. After hearing argument, the trial court denied the motion.

A jury trial took place on October 26, 27, and 28, 2015. The jury acquitted Appellant of rape, burglary, and terroristic threats, but found him guilty of sexual assault, criminal trespass, false imprisonment, and simple assault. On February 23, 2016, the trial court sentenced Appellant to an aggregate term of incarceration of not less than three and one-half nor more than seven years, to be followed by a two-year term of probation.

*Commonwealth v. Cooper*, 2017 WL 1372802, at **1-2 (Pa. Super. Apr. 13, 2017) (unpublished memorandum) (footnotes and most record citations omitted).

On April 13, 2017, this Court affirmed the judgment of sentence. *Id.* On October 12, 2017, the Pennsylvania Supreme Court denied leave to appeal. *See Commonwealth v. Cooper*, 172 A.3d 1112 (Pa. 2017).

Cooper filed the instant, timely *pro se* PCRA petition on October 23, 2017. The PCRA court appointed counsel. An evidentiary hearing took place on January 22, 2018.

- 4 -

At the hearing, Cooper provided a list of names to the PCRA court of witnesses he stated were ready and available at trial to offer testimony on his behalf, he verbally amended the list to add additional names at the hearing. N.T. PCRA Hearing, 1/22/2018, at 6-13. None of the proposed witnesses provided any affidavits substantiating his claims and none testified at the PCRA hearing. Cooper also testified regarding various text messages, photos, voicemails, phone records, Facebook messages, web pages, and other documents, that he believed that counsel should have obtained and placed into evidence at trial. *Id.* at 13-19.

Conversely, counsel testified that he was unaware of the existence of most of the witnesses on the list. *Id.* at 38-39. Counsel stated that he spoke with the sole witness Cooper asked him to interview, Ashlee Johnston, several times but was unable to substantiate Cooper's contention that she had exculpatory evidence in the form of a text message from the victim claiming that she was setting Cooper up. *Id.* at 38. Counsel also stated that Cooper gave him several character letters but, when he explained that the individuals who wrote them would have to testify in court, not just write letters, Cooper refused to allow counsel to call them. *Id.* at 39. Counsel expressed that, because Cooper was so adamant in not allowing him to call the character witnesses, he wondered if the letters were fraudulent. *Id.* at 45. Counsel also maintained that he believed his trial strategy of questioning the timeline and the lack of severity of the victim's injuries in contrast to her description

of a violent rape was successful. He pointed out that the jury acquitted Cooper of four charges, including the three most serious charges, two counts of rape and one count of burglary, all felonies of the first degree, as well as terroristic threats. *Id.* at 39-40.

On January 25, 2018, the court denied Cooper's petition. Cooper did not file an appeal.

On April 26, 2018, Cooper filed a second, timely, *pro se* PCRA petition claiming that counsel had failed to file a requested appeal of the denial of his first PCRA petition. Following a hearing, on June 25, 2018, the PCRA court reinstated Cooper's appeal rights. The instant, timely appeal followed.[3]

Our standard of review is well settled:

This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, [w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. [W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

---

[3] Cooper timely filed a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). The PCRA court issued an opinion on August 16, 2018.

***Commonwealth v. Rigg***, 84 A.3d 1080, 1084 (Pa. Super. 2014) (quotation marks and citations omitted).  Furthermore, where, as here, the defendant alleges counsel rendered ineffective assistance, we note:

> In order to obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish beyond a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place.  When considering such a claim, courts presume that counsel was effective, and place upon the appellant the burden of proving otherwise.  Counsel cannot be found ineffective for failure to assert a baseless claim.
>
> To succeed on a claim that counsel was ineffective, Appellant must demonstrate that:  (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's ineffectiveness prejudiced him.

***Commonwealth v. Michaud***, 70 A.3d 862, 867 (Pa. Super. 2013) (quotation marks and citations omitted).  "To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different." ***Commonwealth v. Mason***, 130 A.3d 601, 618 (Pa. 2015).

In his first claim, Cooper contends that trial counsel failed to conduct an adequate pre-trial investigation.  Cooper's Brief, at 4.  Specifically, Cooper argues that counsel failed to interview many potential witnesses, failed to meet with him, and failed to formulate an adequate trial strategy.  ***Id.*** at 9-11.  We disagree.

Our Supreme Court has stated that counsel has a general duty to undertake reasonable investigations or make reasonable decisions that render

particular investigations unnecessary. ***Commonwealth v. Basemore***, 744 A.2d 717, 735 (Pa. 2000). Counsel's unreasonable failure to prepare for trial is "an abdication of the minimum performance required of defense counsel." ***Commonwealth v. Johnson***, 966 A.2d 523, 535 (Pa. 2009); ***Commonwealth v. Brooks***, 839 A.2d 245, 248 (Pa. 2003) (holding failure to hold any meetings with defendant before trial was ineffective assistance of counsel). This duty to investigate may include a duty to interview certain potential witnesses; and a prejudicial failure to fulfill this duty may lead to a finding of ineffective assistance of counsel. ***See Commonwealth v. Perry***, 644 A.2d 705, 709 (Pa. 1994). Where matters of strategy and tactics are concerned, we deem counsel's assistance constitutionally effective if he chose a particular course that had some reasonable basis to effect the client's interest. ***Commonwealth v. Lesko***, 15 A.3d 345, 380 (Pa. 2011).

Initially, we note that part of this claim is interrelated with Cooper's second and third claims that trial counsel failed to investigate and call witnesses, therefore we will discuss that part of the claim *infra*. To the extent that Cooper claims that counsel did not meet with him sufficiently to develop a coherent trial strategy, the record belies this claim.

At the PCRA hearing, counsel testified that he did not become involved with the case until after arraignment but had several meetings and conversations with Cooper. N.T. PCRA Hearing, 1/22/2018, at 37. As discussed above, counsel testified that his trial strategy was to question both

the victim's timeline and her lack of serious injury. *Id.* at 40. He stated that he believed the strategy was successful because the jury acquitted Cooper of the three most serious charges and one of the lesser charges. *See id.* at 40-41. Counsel clarified that he could not proceed with Cooper's preferred theory of the case, that the victim texted him the night before the incident and invited him over to both visit his child and to have sex because the telephone and FaceTime logs obtained by the police did not support this version of events. *Id.* at 42. He explained that, when he confronted Cooper with this information, Cooper began to alter his account of the events. *Id.*

Here, the PCRA court found that counsel's testimony with respect to this issue was credible and Cooper's testimony was not credible. Order, 1/25/2018. The court stated, "Specifically, [the PCRA] court finds that [Cooper] was not credible in his assertions that former counsel . . . failed to meet [him] or consult with him regarding trial strategy." *Id.* As this finding has support in the record, we have no basis to disturb it. *Commonwealth v. Dennis*, 17 A.3d 297, 305 (Pa. 2011) (great deference is afforded to PCRA court's credibility findings).

Moreover, Cooper has not shown how counsel's strategic decisions, which resulted in his acquittal on the three most serious charges, prejudiced him. Thus, Cooper has failed to set forth the ineffectiveness analysis required by *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Because Cooper has not established the prejudice prong, we must deem counsel's assistance

constitutionally effective. ***See Commonwealth v. Rolan***, 964 A.2d 398, 406 (Pa. Super. 2008) (holding where appellant fails to establish any one of three prongs of ineffectiveness test, he does not meet his burden of proving ineffective assistance of counsel, and counsel is deemed constitutionally effective); ***see also Lesko***, ***supra*** at 380. Cooper's first claim fails.

In his second claim, Cooper alleges that counsel was ineffective for failing to investigate and call eight witnesses at trial. Cooper's Brief, at 11-12; N.T. PCRA Hearing, 1/22/2018, at 6. This claim fails.

> To prove that trial counsel provided ineffective assistance for failing to call a witness, a petitioner must demonstrate:
>
> > (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

***Commonwealth v. Brown***, 196 A.3d 130, 167 (Pa. 2018) (citation omitted).

Here, Cooper did not attach any certifications to his PCRA petition from any of the proposed witnesses, as required by 42 Pa.C.S.A. § 9545(d)(1), and none of them testified at the evidentiary hearing. This is fatal to his claim.[4]

---

[4] Moreover, we note that the record reflects that one of the proposed witnesses actually testified for the Commonwealth at trial. N.T. PCRA Hearing, 1/22/2018, at 10-11. Counsel testified at the PCRA hearing that Cooper never told him about five of the proposed witnesses. ***Id.*** at 38. He also stated that he investigated and interviewed one of the witnesses, Ashlee Johnston, and she did not corroborate Cooper's claim that she had exchanged exculpatory

***Commonwealth v. Dennis***, 950 A.2d 945, 964 (Pa. 2009) (holding that defendant cannot prove claim that counsel was ineffective for failing to call witnesses at trial without having those witnesses testify at PCRA hearing). Cooper's second claim fails.

In his third claim, Cooper contends that counsel was ineffective for failing to call character witnesses. Cooper's Brief, at 12-13. An attorney's failure to present character witnesses may constitute ineffective assistance of counsel. ***Commonwealth v. Harris***, 785 A.2d 998, 1000 (Pa. Super. 2001), *appeal denied*, 847 A.2d 1279 (Pa. 2004). Our Supreme Court has stated:

> [i]n a case such as this, where there are only two direct witnesses involved, credibility of the witnesses is of paramount importance, and character evidence is critical to the jury's determination of credibility. Evidence of good character is substantive, not mere makeweight evidence, and may, in and of itself, create a reasonable doubt of guilt and, thus, require a verdict of not guilty.

***Commonwealth v. Weiss***, 606 A.2d 439, 442 (Pa. 1992) (citation omitted).

However, an attorney who chooses not to present evidence of his client's good

---

text messages with the victim. ***Id.*** at 38. Counsel averred that Cooper specifically told him not to call proposed witness Bettina Lyons-Lilly because she was supportive of the victim. ***Id.*** at 38-39. Further, even assuming, *arguendo*, that counsel was aware of these witnesses, and that they were willing to testify, it is not readily apparent from Cooper's often contradictory and disjointed testimony at the PCRA hearing what their testimony would have been, that the testimony would have been admissible, and that it would have been helpful to the defense. Rather, it appears that the testimony of at least two of the proposed witnesses would have helped the Commonwealth, as it would have demonstrated that the victim made outcry statements that Cooper had raped her, on the same day as the incident, to both her family and his. ***Id.*** at 9, 11.

character is not ineffective so long as the attorney had a "reasonable strategic basis" not to proffer such evidence. ***Commonwealth v. Von Horn***, 797 A.2d 983, 988 (Pa. Super. 2002).

Here, Cooper did not testify at the PCRA hearing that he wanted counsel to call character witnesses. No proposed character witnesses either submitted affidavits or testified at the PCRA hearing, which is fatal to his claim. ***See Dennis***, ***supra*** at 964. Further, as discussed above, counsel did testify that he wanted to call character witnesses and Cooper refused to allow him. N.T. PCRA Hearing, 1/22/2018, at 39, 45. The trial court credited this testimony. Order, 1/25/2018, at 1; Opinion, 8/16/2018, at 3. We have no basis to disturb this finding, which the record supports. ***See Dennis***, ***supra*** at 305. Moreover, Cooper's unsupported argument on appeal that counsel had a duty to investigate and call to testify character witnesses even though Cooper had specifically directed counsel not to call them is less than persuasive. Cooper's third claim fails.

In his final claim, Cooper maintains that trial counsel was ineffective for failing to obtain and introduce at trial a plethora of voicemails, photographs, text messages, phone records, and social media exchanges. Cooper's Brief, at 14-15. We disagree.

At the PCRA hearing, counsel testified that Cooper never requested that he obtain any text messages, photos, or voicemails on his phone. N.T. PCRA Hearing, 1/22/2018, at 46-47. Counsel also stated that he did not recall

Cooper requesting that he obtain phone records or social media exchanges. *Id.* at 47-48. Counsel did review those phone records and text messages obtained by the police, which did not contain exculpatory information as Cooper claimed. *Id.* at 41. The PCRA court credited this testimony and we have no basis to disturb the court's findings. *See Dennis*, *supra* at 305.

Moreover, Cooper again fails to explain how these various documents were either relevant or otherwise admissible, and how their absence prejudiced him. Thus, he has failed to set forth the analysis required by *Strickland*, and we must deem counsel's actions to be constitutionally effective. *Rolan*, *supra*. Cooper's final claim fails.

In light of the foregoing, our review of this matter demonstrates that the record supports the PCRA court's denial of relief and is free from legal error and abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/26/2019