J-A13014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| WILLIE C. PETERSON, III | : | No. 1512 MDA 2022 |

Appeal from the PCRA Order Entered October 21, 2022
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0007734-2017

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED OCTOBER 18, 2023**

The Commonwealth of Pennsylvania appeals from the October 21, 2022 order granting relief in the form a new trial to Willie C. Peterson, III ("Appellee") on his petition filed pursuant to the Post Conviction Relief Act ("PCRA").  We reverse the PCRA court's order.

A previous memorandum summarized the relevant factual background of this case as follows:

> On May 28, 2017, at around 9:33 PM, York City Police were dispatched to an incident in the area of . . . East Princess Street due to the result of a possible shooting.  The driver of the vehicle was located in the driver's seat and was identified as Edwin Pacheco-Ruiz ("Victim").
>
> At the time of the incident, there was a front seat passenger, Lucille Bishop ("Lucy"), Victim's girlfriend.  Lucy was present inside Victim's vehicle during the shooting.  Lucy testified that

---

[*] Former Justice specially assigned to the Superior Court.

after Victim had dropped his son off with Lacresha Cole-Carter at around 9:00 PM, Lucy and Victim were heading to Falloons, which is a bar. On their way to the bar, [Appellee] signaled Victim to stop on the street in front of a white church. Victim stopped the car and let [Appellee] into the car.

Lucy was sitting in the front passenger seat. [Appellee] was seated in the backseat behind Victim. Lucy stated that when [Appellee] got into the car, he said that "he had five and he was going to hit." Lucy witnessed [Appellee] shoot Victim in the head. She heard two shots "just one after the other." She saw the gun. After Victim was shot in the head, he fell over onto Lucy. Victim's car eventually crashed into a house. Lucy was able to get out of the car.

Lucy testified that Victim identified the shooter as "Homer." Lucy stated that Victim "told him not to do it." Lucy emphasized that Victim said "not to do it" "over and over again," and called him "Homer" "so many times." She further specified that Victim said Homer "probably like twenty times." Through further investigation, "Homer" was identified as [Appellee].

On May 30, 2017, Victim . . . was pronounced dead from his injuries.

***Commonwealth v. Peterson***, 248 A.3d 499, 2021 WL 225623, at *1,

(Pa.Super. 2021) (non-precedential decision) (cleaned up).

Appellee proceeded to a jury trial. The PCRA court summarized the

following relevant testimony:

Matthew Tunall, an officer with York City Police Department, testified that upon arriving at the scene he noticed the driver side door [of Victim's car] was open. Officer Tunall observed an adult female, later identified as Elizabeth Montalvo, ("Ms. Montalvo") at the driver side door holding a shirt, and applying pressure, to the head of [Victim]. Lucy also testified regarding the identity of the individual, "Homer," who shot [Victim,] ultimately identifying [Appellee] as the shooter.

[Appellee] called several witnesses for the defense, including Twanette Orr. Ms. Orr testified that, on the night in

- 2 -

question, she was in the house into which [Victim's] vehicle crashed. Ms. Orr stated she went out to the vehicle where she saw [Victim] and [Lucy] who "jumped out of the car yelling about who did it." Ms. Orr stated that she heard [Lucy] say "Homer[,]" testifying that "[s]he was calling [Appellee] Homer, that is his nickname." Defense counsel [argued that Ms. Orr had never mentioned this information concerning Lucy in her prior statements to police]; however, [under questioning,] Ms. Orr repeatedly stated that she heard [Lucy] identify "Homer."

PCRA Court Opinion, 10/21/22, at unnumbered 3-4 (cleaned up).

At the conclusion of trial, the jury convicted Appellee of first-degree murder, and he was subsequently sentenced to life in prison. Appellee filed a direct appeal, and this Court affirmed his judgment of sentence.

Thereafter, Appellee initiated the instant PCRA proceeding by filing a timely, counseled first PCRA petition challenging, among other things, the effectiveness of trial counsel for failing to investigate Ms. Montalvo and electing to present Ms. Orr as a witness. *See* PCRA Petition, 2/9/22, at 18-19, 23. A hearing was held to examine Appellee's claims, and the only witness called at the hearing was Appellee's trial counsel, Thomas Kelley, VI, Esquire.

The PCRA court granted Appellee a new trial on the grounds that Attorney Kelley provided ineffective assistance in failing to investigate Ms. Montalvo, calling Ms. Orr to testify, and employing insufficient efforts to secure a private investigator, a basis that the court raised *sua sponte*. *See* PCRA Court Opinion, 10/21/22, at unnumbered 9-10. This timely appeal followed. Both the Commonwealth and the PCRA court complied with Pa.R.A.P. 1925.

The Commonwealth raises the following issues, which we have reordered for ease of disposition:

I.  Did the PCRA court err in granting [Appellee's] PCRA petition:

a)  Where [Appellee] failed to show that [Ms. Montalvo] was available and willing to testify for the defense at trial or that the absence of her testimony was so prejudicial as to have denied [Appellee] a fair trial and where counsel had a reasonable basis for his actions;

b)  Where counsel had a reasonable basis for calling [Ms. Orr] and the witness's testimony did not cause [Appellee] any prejudice; and

c)  Where [Appellee] did not raise a claim of ineffective assistance of counsel for failure to hire a private investigator.

Commonwealth's brief at 4 (cleaned up).

This Court's standard of review is as follows:

[A] trial court order granting or denying relief under the PCRA calls upon us to determine whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record.

**Commonwealth v. Parker**, 249 A.3d 590, 594 (Pa.Super. 2021). "Our scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the party who prevailed in the PCRA court proceeding." **Commonwealth v. Elliott**, 80 A.3d 415, 427 (Pa. 2013). Instantly, Appellee prevailed at the PCRA level. "Thus, we must review the record in a light most favorable to him, not the Commonwealth." **Commonwealth v. Stewart**, 84 A.3d 701, 706 (Pa.Super. 2013). This Court

grants "deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record." ***Commonwealth v. Rigg***, 84 A.3d 1080, 1084 (Pa.Super. 2014) (cleaned up). However, "we afford no deference to [the PCRA court's] legal conclusions." ***Id***. (cleaned up).

All three of the Commonwealth's claims concern whether Appellee sufficiently proved ineffective assistance of trial counsel. It is well-settled that counsel is presumed to be effective, and Appellee bears the burden of proving otherwise. ***See Commonwealth v. Johnson***, 236 A.3d 63, 68 (Pa.Super. 2020) (*en banc*). To find counsel ineffective, the PCRA court was required to determine that Appellee established the following three elements:

> (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different.

***Id***. (cleaned up). On the other hand, "[a] claim of ineffectiveness may be denied by a showing that the petitioner's evidence fails to meet any of these prongs." ***Commonwealth v. Washington***, 927 A.2d 586, 594 (Pa. 2007). "We are not required to analyze the elements of an ineffectiveness claim in any particular order." ***Commonwealth v. Montalvo***, 205 A.3d 274, 286 (Pa. 2019).

We turn to the Commonwealth's first argument, namely that the PCRA court's ruling was in error because Appellee failed to prove ineffectiveness based on Attorney Kelley's actions concerning Ms. Montalvo. The PCRA court

determined that Attorney Kelley was ineffective because he did not attempt to find and interview Ms. Montalvo, stating that a "reasonable pretrial investigation would have included attempts to find [Ms.] Montalvo." PCRA Court Opinion, 10/21/22, at unnumbered 9. However, the Commonwealth asserts that the PCRA court erred because Attorney Kelley did, in fact, attempt to ensure that Ms. Montalvo participated in the legal proceedings. **See** Commonwealth's brief at 13-14.

This Court has stated that a claim "has arguable merit where the factual averments, if accurate, could establish cause for relief." **Stewart**, **supra** at 707 (cleaned up). "Whether the facts rise to the level of arguable merit is a legal determination." **Id**. As arguable merit relates to investigating witnesses, "[a] claim that trial counsel did not conduct an investigation or interview known witnesses presents an issue of arguable merit where the record demonstrates that counsel did not perform an investigation." **Id**. at 712.

The record belies the PCRA court's finding that Attorney Kelley neglected to investigate Ms. Montalvo. Rather, it demonstrates that Attorney Kelley sought to secure Ms. Montalvo as a witness in Appellee's trial. First, he attempted to serve Ms. Montalvo with a subpoena at the address provided to him by the Commonwealth. **See** N.T. Trial, 1/13-17/20, at 381. When that failed, Attorney Kelley had the police confirm the accuracy of the contact information using the JNET database. **Id**. at 382. These efforts to secure Ms.

- 6 -

Montalvo's testimony refute the notion that Attorney Kelley overlooked her as a potential witness. Moreover, while Appellee asserts in his brief that Ms. Montalvo would have identified Victim's shooter as "Omar," *see* Appellee's brief at 16, Appellee does not expound upon this statement, and the certified record is devoid of evidence supporting this contention. Consequently, Appellee's claim lacks arguable merit, and, therefore, the PCRA court erred in granting relief on this basis.

The Commonwealth's second issue challenges the PCRA court's finding that Attorney Kelley provided ineffective assistance in presenting Ms. Orr's testimony at trial. Specifically, the Commonwealth asserts that this claim fails because Attorney Kelley had a reasonable basis for his actions, and because Appellee did not suffer prejudice considering Lucy's testimony that she observed Appellee shoot Victim in the back of the head.

It is well-settled that counsel is deemed effective if his actions "had some reasonable basis designed to effectuate his client's interests." *Commonwealth v. Perry*, 644 A.2d 705, 708 (Pa. 1994). As such, "if we conclude that the particular course chosen by counsel had some reasonable basis, our inquiry ceases and counsel's assistance is deemed effective." *Commonwealth v. Mullen*, 267 A.3d 507, 512 (Pa.Super. 2021) (cleaned up). Furthermore, "[j]udicial scrutiny of counsel's performance must be highly deferential and the reasonableness of counsel's decisions cannot be based

upon the distorting effects of hindsight." ***Commonwealth v. Sandusky***, 203 A.3d 1033, 1094 (Pa.Super. 2019) (cleaned up).

At trial, the Commonwealth called Lacresha Cole-Carter to testify that, at the time of the incident, Ms. Orr told her that Victim had repeated the name "Homer" after being shot. ***See*** N.T. Trial, 1/13-17/20, at 356-57, 617-18. However, Detective Travis Sowers subsequently testified that, during an interview with Ms. Orr, she "told [him] she didn't" hear Victim say "Homer" after he had been shot, thereby contradicting Ms. Cole-Carter's testimony. ***Id***. at 617. In calling Ms. Orr as a defense witness, Attorney Kelley believed that her statement articulating that she did not hear Victim say Homer would cast doubt on the evidence identifying Appellee as the shooter. ***See*** N.T. PCRA Hearing, 5/20/22, at 13-14, 21. Specifically, Attorney Kelley thought that her testimony would "bootstrap" his defense theory, *i.e.*, misidentification. ***Id***. at 14. Although, as discussed *supra*, Ms. Orr's testimony ultimately did not aid Appellee in the manner that Attorney Kelley anticipated, we do not judge the reasonableness of counsel's strategy solely in hindsight. ***See Sandusky***, ***supra*** at 1094.

Moreover, as the Commonwealth accurately observes, the PCRA court erred in finding that Appellee satisfied the prejudice prong of the test for ineffective assistance. Our Supreme Court has held that "[p]rejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the

proceeding would have been different." ***Commonwealth v. Pierce***, 786 A.3d 203, 213 (Pa. 2001). "[A] reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." ***Commonwealth v. Jones***, 210 A.3d 1014, 1019 (Pa. 2019) (cleaned up). However, the possibility of a different outcome must be more than "attenuated." ***Id.***

The PCRA court opined that Attorney Kelley's actions were prejudicial because, before Ms. Orr testified, the jury could have judged that there was reasonable doubt as to the identification of the shooter as "Omar" instead of "Homer." ***See*** PCRA Court Opinion, 10/21/22, at unnumbered 9-10. However, this rationale ignored abundant evidence of Appellee's guilt, namely, Lucy's eyewitness testimony that Appellee shot Victim in the head from the back seat of the vehicle that Victim was operating. As a passenger in that vehicle, Lucy positively identified Appellee as the shooter and never wavered in her conviction that Appellee had committed the crime. Hence, the court erred in finding prejudice in light of this overwhelming evidence of Appellee's guilt.[1]

---

[1] To the extent that the PCRA court found fault with Attorney Kelley's failure to interview Ms. Orr before calling her to testify, Appellee did not plead this issue as grounds for relief in his PCRA petition. Instead, he simply argued that counsel was ineffective for **calling** Ms. Orr, as opposed to neglecting to interview her. ***See*** PCRA petition, 2/9/22, at 23. Indeed, the only witness that Appellee contended Attorney Kelley was ineffective for not interviewing was Ms. Montalvo. ***See id***. at 18-19. As discussed in the body of this memorandum, a PCRA petitioner bears the burden of pleading and proving claims on their merits, and issues that are not raised in a PCRA petition cannot
*(Footnote Continued Next Page)*

Finally, we address the Commonwealth's argument that the PCRA court erred in granting relief to Appellee based upon a ground that the court raised *sua sponte*, *i.e.*, that Attorney Kelley failed to submit a second application for an investigator after the trial court rejected the first request as too expensive. By way of background, Attorney Kelley submitted to the court a request for an investigator at the cost of $75 per hour. This request was denied by the court, and Attorney Kelley did not refile. **See** N.T. PCRA Hearing, 5/20/22, at 24-25.

As noted, Appellee did not assert this issue as a basis for relief. Instead, the PCRA petition contended that he provided ineffective assistance in failing to locate Ms. Montalvo and in calling Ms. Orr, as discussed *supra*. Specifically, he pled as follows:

> [Attorney Kelley] was appointed by the court. He applied for funds to hire a private investigator to interview witnesses. When his application was refused, he did not interview witnesses that were very important in a one witness identification case where there was a dispute over whether [Victim] said he was shot by Omar or whether [Victim] said he was shot by Homer.

PCRA Petition, 2/9/22, at 18. At the PCRA hearing, Attorney Kelley stated that, in his experience as an attorney, he was not familiar with any investigators who would work for a rate lower than the $75 per hour that the

---

be examined on appeal. Moreover, as we also discussed in the body, the Commonwealth presented overwhelming evidence of Appellee's guilt. Thus, the PCRA court erred in granting relief based upon counsel's failure to interview Ms. Orr.

court denied. *See* N.T. PCRA Hearing, 5/20/22, at 24-25. The PCRA court, however, replied that the "current rate" was for $20 less than that per hour. *Id*. at 25. Citing Attorney Kelley's failure to use an investigator to locate Ms. Montalvo and speak to Ms. Orr before calling her as a witness at trial, the PCRA court opined that counsel's "failure to obtain, and re-apply for approval of, an investigator that complied with the [c]ourt's current rate of pay for investigators satisfied all three prongs of the ineffectiveness test." PCRA Court Opinion, 10/21/22, at unnumbered 9.

We have already rejected Appellee's claims concerning counsel's handling of Ms. Montalvo and Ms. Orr. While Appellee mentioned in passing in his PCRA petition counsel's efforts to hire an investigator, the petition did not allege Attorney Kelley's ineffectiveness due to failing to pursue hiring an investigator at a reduced rate of pay.[2] It is well-settled that a "petitioner bears the burden of pleading and proving claims on their merits" in a PCRA petition. *Commonwealth v. Smith*, 121 A.3d 1049, 1054 (Pa.Super. 2015). Furthermore, "issues not raised in a PCRA petition cannot be considered on appeal." *Commonwealth v. Lauro*, 819 A.2d 100, 103 (Pa.Super. 2003). In the instant case, Appellee did not plead this specific claim of ineffectiveness

---

[2] Appellee asks us to quash the Commonwealth's appeal because it falsely represents that the PCRA petition "did not raise the claim that trial counsel was ineffective for failure to investigate including the claim that [Attorney Kelley] did not reapply for the services of an investigator[.]" Appellee's brief at 1 (cleaned up). As indicated above, our review of the petition reveals no false assertions by the Commonwealth. Quashal is not warranted.

in his petition. Rather, he averred that the actions that made Attorney Kelley ineffective occurred after his request for an investigator was denied. Therefore, to the extent that the PCRA court premised its grant of relief upon counsel's failure to secure a less expensive private investigator, it erred. Phrased differently, the PCRA court should not have granted relief on a basis that Appellee neither pled in the petition nor proved at the hearing.

For all the foregoing reasons, we reverse the PCRA court's order.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/18/2023