J-S53019-20
J-S53020-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NAFIS PENNINGTON | : | |
| | : | |
| Appellant | : | No. 3373 EDA 2019 |

Appeal from the PCRA Order Entered October 24, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013565-2012

\*\*\*\*

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NAFIS PENNINGTON | : | |
| | : | |
| Appellant | : | No. 3374 EDA 2019 |

Appeal from the PCRA Order Entered October 24, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0013566-2012

BEFORE:   SHOGAN, J., LAZARUS, J., and STRASSBURGER, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED:  JANUARY 29, 2021**

Nafis Pennington appeals from the order, entered in the Court of
Common Pleas of Philadelphia, dismissing without a hearing his petition filed

_____

[*] Retired Senior Judge assigned to the Superior Court.

pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, following his convictions for aggravated assault,[1] conspiracy,[2] and related weapons offenses.[3] After careful review, we affirm.[4]

We have previously set forth the facts of this case as follows:

> The instant matter arose out of two gang-related shootings in the fall of 2011 and the summer of 2012. The Commonwealth charged [Pennington] in both shootings, but the jury acquitted him of all charges related to the June 11, 2012 shooting.[*]
>
>> [*] Since the jury acquitted [Pennington] of all charges arising out the June 2012 shooting, we need not discuss it further, except to note that certain of the Commonwealth witnesses testified about both shootings, while others only testified regarding one shooting. One of the witnesses who only testified about the June 2012

_____

[1] 18 Pa.C.S.A. § 2702(a).

[2] 18 Pa.C.S.A. § 903(c).

[3] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 6108, and 907(a).

[4] By filing two separate notices of appeal with one docket number on each notice, Pennington has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), which held that "where a single order resolves issues arising on more than one docket, separate notices of appeal must be filed for each of those cases." **See** Pa.R.A.P. 341(a); **see also Commonwealth v. Johnson**, 236 A.3d 1141, ---- (Pa. Super. filed July 9, 2020) (en banc) (concluding that "in so far as [**Commonwealth v. Creese**, 216 A.3d 1142 (Pa. Super. 2019)] stated 'a notice of appeal may contain only one docket number[,]' . . . that pronouncement is overruled."); **Commonwealth v. Larkin**, 235 A.3d 350, ---- (Pa. Super. filed July 9, 2020) (en banc) (recognizing that **Johnson** "expressly overruled **Creese** to the extent that **Creese** interpreted **Walker** as requiring the Superior Court to quash appeals when an appellant, who is appealing from multiple docket numbers, files notices of appeal with all of the docket numbers listed on each notice of appeal."). Therefore, we shall proceed with our review of Pennington's appeal.

shooting was Detective Mary Kuchinsky, who stated that she took a statement from a witness to the incident.

In 2011, there was a rivalry between two groups in the West Philadelphia neighborhood known as "the Bottom." [Pennington] and co-defendant Kiyon Grant associated with a crew that congregated on Mt. Vernon Street between 35th and 38th Streets. The victims, Randy Brown and Garren Tyler, associated with a faction that gathered around 32nd and Brandywine Streets.

On November 9, 2011, Brown and Tyler were walking to Brown's house. At the intersection of 32nd and Mt. Vernon Streets, [Pennington], co-defendant Grant, and Jeffrey Johnson walked to within three car lengths of Brown and Tyler. The trio pulled out guns and fired on them. One bullet hit Brown's left thigh, causing him to fall. Tyler attempted to flee but a bullet hit his ankle.

Detective Craig Fife arrived at the scene and recovered five fired cartridge casings. He saw a trail of blood leading to the doorway of Brown's house, one-half block from the scene of the shooting. He saw another blood trail leading to the doorway of Tyler's aunt's house.

Brown refused to cooperate with police. While Tyler initially refused to cooperate with police, he gave a statement to them in April 2012, after being arrested on an unrelated matter.

On June 13, 2012, Detective Frank Mullen took a statement from India Tyler; in the statement[,] she said that she saw co-defendant Grant and Jeffrey Johnson shoot her cousin. She also stated that [Pennington] and co-defendant Grant associated with people from 35th Street. She further discussed a history of disagreements between the 35th Street group and the 32nd Street and Brandywine Avenue group.

Ms. Tyler testified that Eli Boyd was not associated with either group. Mr. Boyd testified that, on June 29, 2012, he gave a statement to the police. In his statement, he described animosity between the two neighborhood groups over drugs and territory. Boyd also told police that [Pennington], co-defendant Grant, and Johnson[] shot Tyler and Brown in November 2011.

On July 2, 2012, police officers executed a search warrant at 3421 Wallace Street, the residence of Whitley Kelly, the mother of [Pennington]'s child. They recovered a Hi-Point semiautomatic

handgun, which was loaded, several bills in [Pennington]'s name, and a receipt showing that [Pennington] had paid rent to Kelly. Subsequent testing demonstrated that the gun was operable, and that it had fired all five shell casings recovered from the scene of the shooting.

On November 28, 2012, the Commonwealth filed a criminal information. A jury trial began on January 29, 2015.

At trial, Tyler testified in accordance with the statement he gave to police, stating that [Pennington] and co-defendant Grant shot him and Brown. However, India Tyler recanted her previous statement with respect to the shooting. Boyd also recanted his statement to the police.

Detective Matthew Carey, a detective with significant experience in the neighborhood, testified, without objection, that [Pennington] and co-defendant Grant were from the area of 35th Street to 38th Street on Mt. Vernon Street. However, Brown and his friends lived in the area of 32nd Street and Brandywine and Haverford Avenues. Tyler associated with Brown and his friends. Detective Carey stated that Boyd was friends with both groups. He noted that India Tyler was related to Garren Tyler. When the Commonwealth attempted to question Detective Carey about "the relationship between the groups that hang at 32nd and 33rd and the group that hangs at 35th and 36th," [Pennington] objected, claiming that this called for a "speculative opinion."**

> ** At that point, the trial broke for the day. The next morning, [Pennington]'s counsel admitted that he had no law to support a contention that a police officer possessing sufficient familiarity with an area could not testify about neighborhood rivalries. [Pennington] did not renew his objection that the testimony was speculative. Rather, he asked that the trial court conduct an *in camera* hearing to lay a foundation about Detective Carey's familiarity with the neighborhood before allowing the jury to hear the testimony, stating if "he has expertise and then, if Your Honor says 'I believe he'd be qualified to talk about that,' then we'll let the jury hear the testimony." The trial court then ruled that Detective Carey could not mention any criminal activities or gangs. [Pennington's counsel] noted that evidence regarding a relationship between [Pennington] and co-defendant Grant was already in the record and that they were not disputing that they knew each

- 4 -

other. The trial court ruled that Detective Carey could testify that he had seen [Pennington] and co-defendant Grant together and with others in a group and that[] he had seen the victims with a group that congregated in a different area.

Ultimately, Detective Carey testified that [Pennington] and co-defendant Grant "associated with 35th Street to 38th Street on Mt. Vernon Street and Melon Street, exclusively." He continued that "these guys primarily stay on those blocks, they don't go to 32nd Street and [33rd Street and] hang out[.]" He reiterated that the victims were part of the 32nd and 33rd Street group[s] and that the two groups did not co[m]mingle.

Detective Craig Fife, the assigned detective with respect to the November 2011 shooting[,] testified as to his role in the investigation. On cross-examination, when asked by co-defendant Grant's counsel how he ascertained that his client lived at a certain address, Detective Fife stated that he obtained the address through probation or parole.

*Commonwealth v. Pennington*, 1364 EDA 2015 at 2-6 (Pa. Super. filed Feb. 8, 2017) (unpublished memorandum decision) (internal citations omitted).

On February 4, 2015, the jury convicted Pennington of the above-stated offenses. On April 16, 2015, the trial court sentenced Pennington to an aggregate term of incarceration of twenty-six to sixty years. Pennington did not file any post-sentence motions; he filed a timely notice of appeal on May 14, 2015. On February 8, 2017, this Court affirmed his judgment of sentence. *See id.*

On August 28, 2018, Pennington filed the instant counseled PCRA petition. On December 12, 2018, the Commonwealth filed a motion to dismiss, and the PCRA court issued notice of its intent to dismiss the petition

within twenty days pursuant to Rule 907 of the Pennsylvania Rules of Criminal Procedure. Ultimately, after the court granted several continuances, Pennington filed an amended PCRA petition on April 2, 2019. On July 11, 2019, the Commonwealth filed a supplemental motion to dismiss. On September 26, 2019, the PCRA court issued its Rule 907 notice of intent to dismiss the petition within twenty days. On October 24, 2019, the PCRA court issued an order dismissing Pennington's PCRA petition.

On November 12, 2019, Pennington timely filed the instant notice of appeal followed by a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. In the single issue presented in his Rule 1925(b) statement, Pennington alleged generally that the PCRA court erred in denying his petition without a hearing because "there were many errors of law at trial, including ineffective assistance of counsel, which biased him[.]". Appellant's Rule 1925(b) Statement, 12/17/19. In its Rule 1925(a) opinion, the PCRA court stated that Pennington waived any arguments related to ineffective assistance of counsel, and that no genuine issues of fact existed warranting an evidentiary hearing:

> [Pennington], in his complaint, generally alleges that "there were many errors of law at trial, including ineffective assistance of counsel[.]." Without any reference to the basis of th[is] assertion[], the [c]ourt is left with the dilemma of only being able to guess at that to which he refers. As is his wont, [Pennington] raised numerous complaints in his amended petitions, but has utterly failed to address them in his statement of errors. Consequently, [Pennington] has failed to even remotely address

his burden as established by **Strickland/Pierce**[5] and its progeny. Therefore, the [c]ourt deems these complaints to have been waived. Thus, the only issue before the [c]ourt is [Pennington's] complaint that the [c]ourt erred in denying him an evidentiary hearing. . . . [T]o justify a hearing, [Pennington] must prove that there is a genuine issue of material fact which could entitle him to relief. **Commonwealth v. Clark**, 961 A.2d 80, 84 (Pa. 2008); **Commonwealth v. D'Amato**, 856 A.2d 806, 820 (Pa. 2004); Pa.R.Crim.P. 908(A)(2).

. . . [Pennington] has failed to articulate which of [his] issues gives rise to the need for an evidentiary hearing. . . . The [c]ourt finds [Pennington] has failed to raise a genuine issue of fact which, if resolved in his favor, would entitle him to relief. [Pennington] has not met, nor even attempted to address, his burden under **Strickland/Pierce**.

PCRA Court Opinion, 1/29/20, at 5-6.

In his appellate brief, Pennington raises one issue for our review: "Did the [PCRA] court err, abuse its discretion, and/or make a mistake of law when it denied [Pennington]'s [PCRA] petition for relief, on October 24, 2019, without an evidentiary hearing?" Brief of Appellant, at 2. Pennington maintains only that the PCRA court should have held an evidentiary hearing on his claim for ineffective assistance of counsel. *See id.* at 11-12, 14-17.

It is well-settled that there is no absolute right to an evidentiary hearing on a PCRA petition. **Commonwealth v. Maddrey**, 205 A.3d 323, 328 (Pa.

---

[5] **See Strickland v. Washington**, 466 U.S. 668, 694 (1984) (ineffective assistance mandates relief only where defendant establishes "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."); **Commonwealth v. Pierce**, 527 A.2d 973 (Pa. 1987) (counsel's performance is evaluated in light of reasonableness if it is determined that underlying claim of ineffective assistance has arguable merit).

Super. 2019). If the PCRA court can determine from the record that no genuine issues of material fact exist, then no hearing is necessary. *Id.* We will reverse a PCRA court's decision to dismiss a petition without a hearing only where an appellant shows "that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing." *Commonwealth v. Hanible*, 30 A.3d 426, 452 (Pa. 2011).

We agree with the PCRA court's determination that Pennington waived his right to challenge counsel's effectiveness by failing to preserve the issue in his Rule 1925(b) statement. Rule 1925(b) directs that an appellant's statement of errors "shall concisely identify each error that the appellant intends to assert with sufficient detail to identify the issue to be raised for the judge." Pa.R.A.P. 1925(b)(4)(ii). "Issues not included in the Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii); *see also Commonwealth v. Lord*, 719 A.2d 308, 309 (Pa. 1998) (issues not addressed in Rule 1925(b) statement are waived); *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa. Super. 2001) (Rule 1925(b) statement "which is too vague to allow the court

to identify the issues raised on appeal is the functional equivalent of no

Concise Statement at all.").[6]

_____

[6] Even if Pennington had preserved this issue, it would entitle him to no relief. The law presumes that counsel was effective, and it is the burden of the defendant to prove otherwise to the PCRA court. **Hanible**, **supra** at 439. In order to establish ineffective assistance, a petitioner must show that his claim is of arguable merit, his counsel's performance lacked a reasonable basis, and counsel's performance caused him prejudice—i.e., but for counsel's error, the outcome of the proceeding would have been different. **Commonwealth v. Brooks**, 839 A.2d 245 (Pa. 2003).

Pennington argues that counsel was ineffective for "not objecting to the improper allowance of gang/group rivalry testimony and all the charged persons['] relationships thereto[,] nor consulting an expert about this subject." Brief of Appellant, at 15-16. Neither claim has been presented sufficiently to entitle him to relief.

In his brief, Pennington does not specifically identify what testimony was improperly admitted, the location in the record of that testimony, or where he preserved this claim for purposes of appeal; he does not cite to any legal authority to support his claim that the testimony was improperly admitted, nor articulate a legal basis for the exclusion of such evidence. **See** Brief of Appellant, at 15-17. As we warned Pennington on direct appeal, "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant. . . . Moreover, it is not this [C]ourt's responsibility to comb through the record seeking the factual underpinnings of Appellant's claim." **Commonwealth v. Pennington**, 1364 EDA 2015 at 2-6 (Pa. Super. filed Feb. 8, 2017) (unpublished memorandum decision) (internal citations omitted). We find, therefore, that the PCRA court properly rejected this undeveloped claim of ineffective assistance of counsel. **See** 42 Pa.C.S.A. § 9543 (PCRA petitioner bears burden of establishing entitlement to relief by preponderance of evidence).

Similarly, the PCRA court acted within its discretion in rejecting Pennington's undeveloped ineffective assistance claim related to counsel's failure to consult an "expert regarding gangs, criminal organizations, or persons affiliate[ed] with them." Brief of Appellant, at 16. Pennington did not identify to the PCRA court any existing, available, and willing expert who could have offered

In light of the foregoing, we conclude that the PCRA court properly dismissed Pennington's PCRA petition without a hearing.

Order affirmed.

Judgment Entered.

*[signature]*

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/29/21

_____

favorable testimony for the defense. Accordingly, he has failed to meet the burden of establishing entitlement to relief. ***See Commonwealth v. Washington***, 927 A.2d 586, 599 (Pa. 2007) (to prove trial counsel was ineffective for not calling a witness, a defendant must show that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known that the witness existed; (4) the witness was willing to testify for the defense; and (5) the absence of the witness's testimony was so prejudicial as to have denied defendant a fair trial).

Furthermore, this claim is meritless because the trial court precluded Commonwealth witnesses from referring to Pennington's group and their rival group as "gangs," discussing the rivalry between the two groups, or discussing either group's criminal history. N.T. Jury Trial, 1/30/15, at 13. After an extensive discussion outside the presence of the jury, the trial court permitted Detective Carey, to testify regarding his personal observations that Brown and Tyler congregated in a different area than Pennington and Grant. ***Id.*** at 17; N.T. Jury Trial, 1/29/15, at 172.